Leonard R. SIMMONS and RALPH WALKER, INC. *v*. Dale FRAZIER

82-140                                       642 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered November 29, 1982

*Frierson, Walker, Snellgrove & Laser,* for appellants.

*Reid, Burge & Prevallet,* by: *Robert L. Coleman,* for appellee.

DARRELL HICKMAN, Justice. This is an appeal from an award of $107,211.60 to Dale Frazier, the appellee, for

personal injuries he suffered when he was run over by a tractor-trailer truck in Mississippi County, Arkansas. Leonard R. Simmons, the driver, and Ralph Walker, Inc., the owner of the truck, appeal arguing four errors were committed. Simmons died before the trial of natural causes. We affirm the judgment.

It is undisputed that Frazier was hitchhiking on Interstate Highway 55 in July of 1979. He was enroute from Montana to Meridian, Mississippi, where his parents lived. His last ride let him out at about 10:00 p.m. on July 3rd by a weigh station near Blytheville, Arkansas. Frazier sat down on the nine foot wide shoulder with his suitcase and duffle bag to await another ride; while there he fell asleep. At about 1:30 a.m., Simmons, the driver of the rig that hit Frazier, passed the exit to the weigh station by mistake. When Simmons recognized his error he pulled over to the side of the road and began to back the tractor-trailer rig back some six or seven hundred feet to the exit. As he was doing so, he ran over Frazier. Simmons immediately pulled the truck off Frazier. A state policeman testified that there was blood two feet and two inches from the edge of the traveled portion of the interstate and determined that had to be the point of impact. There was evidence that the area was well lighted.

The damage to Frazier's left thigh was extensive. He suffered an avulsion, or tearing away, of the flesh. He was immediately taken to a hospital in Memphis where he remained for thirty-four days. A skin graft was taken from his right upper thigh and an attempt was made to fill the indention made by the avulsion to his injured thigh.

The jury was given a series of instructions regarding the duties of pedestrians and drivers and it is argued that those instructions were contradictory and confusing. It is not argued that the instructions were inherently wrong but were wrong as applied to this case. First, the court gave AMI Civil 2d, 909:

> Streets and highways are available for the use of both pedestrians and motorists. The driver of a motor vehicle must anticipate the presence of pedestrians on

streets and highways, and use ordinary care to avoid injuring them. Pedestrians are required to anticipate the presence of motor vehicles and use ordinary care for their own safety.

Next, the court gave, at the appellants' request, an instruction based on AMI 903A which reads:

There was in effect in the state of Arkansas at the time of the occurrence, statutes which provide that it is unlawful for any person on controlled access facilities to drive any vehicle except in the proper lane provided for that purpose and in the proper direction. There was in force in the state of Arkansas other statutes which provided, one, the definition of pedestrian is any person afoot; two, street or highway, the entire width between property lines of every way, place or whatever nature when any part thereof is open to the use of the public as a matter of right for purposes of vehicular traffic.

The definition of roadway, that portion of a highway improved, designed or ordinarily used for vehicular traffic.

Pedestrian soliciting rides. No person shall stand in a roadway for the purpose of soliciting a ride from the driver of any private vehicle.

A violation of these statutes, although not necessarily negligence, is evidence of negligence to be considered by you along with all the other facts and circumstances in this case.

The appellants argue that these two instructions are confusing because the first instruction tells the jury that a pedestrian has a right to use the highway, yet the second tells the jury that a pedestrian may not stand in a roadway to hitchhike. The appellants contend that AMI 909 should not have been given at all, because it is irreconcilable with AMI 903A. It is pointed out by the appellants on appeal — it was not brought out below — that the Arkansas Highway Commission has formulated a special rule which prohibits pedestrians from using a controlled access highway at all.

That statement is contained in the Minute Order No. 64-144 of May 27, 1964, and reads:

> . . . [I]t is hereby declared to be a policy of this Commission that the use of controlled access state highways in the state by parades, pedestrians, bicycles and other non-motorized traffic shall be prohibited. The Director of Highways is directed to erect official signs on the roadways where such regulations are applicable.

The problem with the appellants' argument is that they did not offer an instruction which recited the Highway Department's Minute Order so that the jurors would be aware of the Highway Department's policy regarding interstate highways. The trial court was not wrong in failing to give an instruction as to a special rule regarding controlled access highways because it was not presented with such an instruction. No doubt, since this was a case involving an interstate, the judge would not have given AMI 909 if it had been demonstrated it was contrary to a rule regarding controlled access highways. Actually the appellants are saying that AMI 909 conflicts with the Highway Department's rule. That may be true, but the trial court was not presented with the argument. The two instructions that were given are not irreconcilable. Read together, the instructions tell the jury that while a pedestrian has the right to use a highway, he cannot stand in the highway to solicit a ride — and common sense dictates one cannot sleep on the highway or shoulder and be blameless if there is an accident.

It is also argued that AMI 901, which details a driver's duty to keep a lookout, further confused the jury because it put undue emphasis on the duty of the driver and, thus, it was implied that a pedestrian does not have a corresponding duty. But another instruction gave the duty of both the driver and pedestrians.

As appellants concede, the instructions themselves were not wrong and we are not convinced that the jury was so confused by the instructions, or that they were so contradictory, that it could not arrive at a fair verdict regarding the

duties and responsibilities of the respective parties. The jury found that Frazier was guilty of 10% negligence in causing the accident and the driver 90%. Therefore, the jury did find that Frazier, as a pedestrian, had a duty which he breached.

The appellants offered an instruction on assumption of risk. The court declined to give it and the appellants argue that was prejudicial error. We do not agree. Because Arkansas is a comparative fault state, assumption of risk is not a complete bar to recovery but is simply a matter to be considered in deciding fault. *See* Ark. Stat. Ann. § 27-1764 (Repl. 1979); AMI Civil 2d, 612 Comment (Supp. 1981). It is a harsh doctrine and has been approved only in limited situations. *Compare with Bugh* v. *Webb,* 231 Ark. 27, 328 S.W.2d 379 (1959). This was not a situation that required the instruction because there was no evidence Frazier actually knew and appreciated the specific danger that caused his injury. That danger in this case was Simmons backing his truck along the shoulder of the interstate. No doubt it was negligence for Frazier to sleep on the shoulder, and the jury so found. But we cannot say, as a matter of law, he assumed the risk of Simmons' action.

The appellants also argue that the award was excessive and that Frazier was guilty of at least 50% of the negligence, which was the cause of the accident, as a matter of law. Both issues were within the province of the jury and we will not substitute our judgment for theirs. Frazier's injuries were severe and permanent; he nearly lost his leg. The evidence reflected that he suffered a good deal of pain and that he has a permanent, large, and deep scar on his left thigh which continues to cause him pain, suffering, and discomfort and some diminution of his ability to work. His medical expenses were over $5,000 and we cannot say that the verdict shocks our conscience. *Morrison* v. *Lowe,* 274 Ark. 358, 625 S.W.2d 452 (1981); *Grandbush* v. *Grimmett,* 227 Ark. 197, 297 S.W.2d 647 (1957).

Nor can we say as a matter of law that Frazier was guilty of negligence which was equal to or more than that of the driver of the rig. As we have indicated, Frazier was no doubt at fault, but whether he was more at fault than a truck driver

who backed a semi-tractor trailer rig six or seven hundred feet at night on the shoulder of an interstate highway, was a question for the jury. The jury's decision will not be overturned unless there is no substantial evidence at all to support the verdict. *St. Louis Southwestern Railway Co.* v. *Pennington*, 261 Ark. 650, 553 S.W.2d 444 (1977).

Affirmed.