H.K. BONDS; Ila Bonds, Appellants,

v.

SNAPPER POWER EQUIPMENT COMPANY, A DIVISION OF FUQUA INDUSTRIES, INC., Appellee.

H.K. BONDS; Ila Bonds, Appellees,

v.

SNAPPER POWER EQUIPMENT COMPANY, A DIVISION OF FUQUA INDUSTRIES, INC., Appellant.

Nos. 90–1807, 90–1865.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1991.

Decided June 21, 1991.

Rehearing and Rehearing En Banc Denied in No. 90–1807 Aug. 9, 1991.

Steven W. Quattlebaum, Little Rock, Ark., for appellant/cross-appellee.

Gordon S. Rather, Jr., Sammye L. Taylor, Little Rock, Ark., for appellee/cross-appellant.

Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and HUNTER,[*] Senior District Judge.

MAGILL, Circuit Judge.

Herman K. and Ila Bonds appeal the judgment of the district court[1] entered following a jury verdict for Snapper Power Equipment Company in the Bonds' products liability action. Mr. and Mrs. Bonds seek a new trial, arguing that the district court's jury instruction on assumption of risk was unwarranted by the evidence and should not have been given. They also argue that the instruction itself was erroneous because it substituted an objective standard of awareness of the risk for the subjective standard required by Arkansas law and because it suggested to the jury that assumption of risk was a complete defense to liability. Snapper cross-appeals the denial of its motion for a directed verdict on the Bonds' failure to warn claim. We affirm.

## I.

In 1980 or 1981, Herman Bonds bought a riding lawn mower made by Snapper. Unlike some mowers, the mower Bonds bought did not have a "deadman switch," a safety device that turns off the blade when the operator leaves the seat of the mower. There were numerous warnings on the mower, including several under the heading "Protection Against Tipovers." They cautioned the user to keep away from ditches, not to mow slopes of more than 15 degrees, and to exercise extreme caution on slopes of more than 10 degrees. Bonds testified at trial that he never read the warnings because he did not consider it necessary to do so.

Bonds' lawn slopes from his house toward the road at an angle of between 17 and 20 degrees, according to his expert at trial. Next to the road is an embankment, referred to at trial as the "drop-off" or the "ditch." The drop-off slopes at about 45 degrees. Bonds testified that he never mowed the drop-off and always stayed at least two feet from it when mowing. On October 7, 1986, Bonds was mowing near the drop-off, keeping about two feet away from it as usual. The mower hit a rock or other object, which caused it to stop moving forward and to slide sideways down the slope several inches. Bonds tried to back up but the wheels spun, so he put the mower into low gear, which caused it to slide down the slope even farther. The mower was still at least a foot from the edge of the drop-off, however. At that

---

[*] THE HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

point Bonds stopped the mower, put it in neutral/park, and then reached down to disengage the blade. As he did so, he felt the mower begin to tip, and he threw himself off it. He was not able to throw himself completely clear of it, however, and the blade sliced off part of Bonds' left foot as the mower fell over into the ditch.

Bonds and his wife filed suit against Snapper, alleging negligence in the design and manufacture of the mower. They also alleged that Snapper had negligently failed to warn consumers of the mower's dangerous design and had breached implied warranties of merchantability and fitness. Finally, the complaint charged that Snapper was strictly liable for supplying an unreasonably dangerous product. At the close of a six-day trial, Snapper unsuccessfully moved for a directed verdict on the Bonds' failure to warn claim on the ground that Bonds had admitted he did not read the warnings. The jury returned a general verdict for Snapper, and judgment was entered in its favor on March 7, 1990. Bonds [2] filed a motion for new trial two days later, and the district court denied the motion. Bonds appeals; Snapper cross-appeals for a directed verdict on Bonds' failure to warn claim in the event that a new trial is granted.

## II.

Assumption of risk used to be a complete bar to recovery in Arkansas, but now it is merely an element of comparative fault. *See W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526, 530 (1982). The Arkansas comparative fault statute provides that in personal injury cases, liability is determined in proportion to fault; however, a plaintiff may recover damages only if his fault is less than the defendant's fault. Ark.Code Ann. § 16–64–122 (1987). "Fault" is defined to include "any act, omission, conduct, *risk assumed*, breach of warranty, or breach of any legal duty which is a proximate cause of any damages sustained by any party." *Id.* (emphasis added).

The district court gave the following instruction on assumption of risk:

Snapper contends that Herman K. Bonds assumed the risk of injury from the dangers which Herman K. Bonds contends caused his injury. In order to establish this defense, Snapper must prove:

FIRST: That the dangerous situation or condition was open and obvious, or that Herman K. Bonds knew of the dangerous situation; and,

SECOND: That Herman K. Bonds voluntarily exposed himself to the danger and was injured thereby.

The court also gave an instruction on comparative fault telling the jury to determine the relative percentages of fault of Snapper and Bonds,[3] and an instruction defining fault to include "negligence and assumption of risk and breach of warranty and supplying a product in a defective condition."[4]

Only errors that prejudice the losing party are grounds for a new trial. 11 C. Wright & A. Miller, Federal Practice and Procedure § 2805 (1973); *see* Fed.R.Civ.P.

---

**2.** For simplicity's sake, from this point on we will refer to Herman Bonds only, although Ila Bonds joined in filing the motion for new trial and is a party to this appeal.

**3.** The comparative fault instruction read:

If you should find that the occurrence was proximately caused by fault on the part of Snapper and not by fault on the part of Herman K. Bonds, then Herman K. Bonds is entitled to recover the full amount of any damages you may find he has sustained as a result of the occurrence.

If you should find that the occurrence was proximately caused by fault of both Herman K. Bonds and Snapper, then you must compare the percentages of their fault.

If the fault of Herman K. Bonds is of less degree than the fault of Snapper, then Herman K. Bonds is entitled to recover any damages which you may find he has sustained as a result of the occurrence after you have reduced them in proportion to the degree of his own fault.

On the other hand, if Snapper was not guilty of fault or if the fault of Herman K. Bonds is equal to or greater in degree than the fault of Snapper, then Herman K. Bonds is not entitled to recover any damages.

Adapted from Arkansas Model Jury Instructions (Civil) 2115 (3d ed. 1989) (AMI).

**4.** AMI 306.

61. If the district court's instruction on assumption of risk was incorrect but harmless, we must affirm.

■■■■ Bonds first argues that the assumption of risk instruction should not have been given because the facts of the case did not justify it. Arkansas law requires that the plaintiff be aware of the specific risk that caused his or her injury, not merely general risks inherent in the activity. Bonds relies on a line of cases best exemplified by *Simmons v. Frazier*, 277 Ark. 452, 642 S.W.2d 314 (1982). In *Simmons* the plaintiff had gone to sleep on the shoulder of a highway and been run over by a truck backing up to a missed exit. The Arkansas Supreme Court held that the trial court did not err in refusing to give an assumption of risk instruction because although the plaintiff knew it was dangerous to sleep on the highway shoulder, he did not know of the specific danger that the defendant's truck would back up along the shoulder and hit him. *Id.* 642 S.W.2d at 316. Bonds characterizes the risk that caused his injury as the risk that the mower would overturn at the particular place where he was mowing when the accident occurred. Because the only evidence on this point is his testimony that he felt no sensation of tipping immediately before the accident, he argues that there was nothing in the record to warrant an instruction on assumption of the risk.

Bonds' argument does not persuade us. The tipover did not cause Bonds' injuries by itself; but for the continued rotation of the blade, he would not have been hurt. Indeed, that is the crux of his case against Snapper. Bonds faced a combination of risks: not only that the mower might tip over into the ditch when he was mowing on the slope, but also that he might then come into contact with the blade as it continued to rotate. *See Tafoya v. Sears Roebuck & Co.*, 884 F.2d 1330, 1341 (10th Cir.1989) (discussing combination of risks in lawnmower tipover case). There was evidence to support the giving of the assumption of risk instruction: Bonds testified both that he knew the blade was dangerous when operating and that he knew it would keep rotating unless he disengaged it or turned off the power. It can also be inferred that he knew it was dangerous to mow close to the drop-off from his testimony that he always stayed at least two feet from the drop-off and never mowed the "tall grass." Thus, there was evidence that Bonds was aware of all the specific risks that led to his injury.

■■■ Bonds also contends that the assumption of risk instruction misstated Arkansas law. He first objects to the district court's formulation of the first element of assumption of risk: "that the dangerous situation or condition was open and obvious, or that Herman K. Bonds knew of the dangerous situation." He claims that the "open and obvious" alternative allowed the jury to substitute an objective standard for the subjective one required by Arkansas law; in other words, the jury could have found that Bonds assumed the risk without finding that he was aware of the specific danger that caused his injury. Bonds cites several Arkansas cases that stress that the plaintiff must be subjectively aware of the risk in order to have assumed the risk. *See Simmons v. Frazier*, 642 S.W.2d at 316 (assumption of risk instruction not required because no evidence plaintiff "actually knew and appreciated the specific danger that caused his injury"); *Price v. Daugherty*, 253 Ark. 421, 486 S.W.2d 528, 529 (1972) (standard is subjective and is based on what particular person in fact sees, knows, understands, and appreciates); *McDonald v. Hickman*, 252 Ark. 300, 478 S.W.2d 753, 754 (1972) (assumption of risk depends on actual knowledge and appreciation of the danger); *see also Lambert v. Will Bros. Co.*, 596 F.2d 799, 802 (8th Cir.1979) (risk assumed must be specifically known, understood, and appreciated).

Bonds overlooks other cases indicating that openness and obviousness of the danger is sufficient to establish the knowledge element of assumption of risk. *Lambert* itself cautions that a "plaintiff will not be heard to say that he did not comprehend a risk which must have been quite clear and obvious to him." 596 F.2d at 803 (quoting W. Prosser, The Law of Torts § 68, at 448

(4th ed. 1971)). And in *Larson Mach., Inc. v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980), the Arkansas Supreme Court stated,

> Of course, [the plaintiff] could be said to have assumed the risk as a matter of law if the danger was so obvious or apparent that knowledge and appreciation thereof should be imputed to him.... One cannot be heard to say that he did not know of a dangerous condition that was so obvious that it was apparent to those of ordinary intelligence.

*Id.* 600 S.W.2d at 8 (citations omitted); *see also Forrest City Mach. Works, Inc. v. Aderhold*, 273 Ark. 33, 616 S.W.2d 720, 723 (1981) (quoting *Larson* and stating that assumption of the risk may bar recovery when the danger is obvious).

In view of the jury's verdict, we need not decide whose interpretation of Arkansas law is correct. The jury found Snapper 0% at fault, Bonds 100%. Therefore, even if the jury misinterpreted the standard for assumption of risk, Bonds still could not have recovered because the jury found no causal link between Snapper's conduct and his injuries.

■ Finally, Bonds argues that the district court's instruction on assumption of risk misled the jury because it called assumption of risk a defense. Bonds argues that the jury could have believed that assumption of risk was a complete defense and found for Snapper on that basis.

Bonds cites *Rogers v. Kelly*, 284 Ark. 50, 679 S.W.2d 184 (1984), in which the Arkansas Supreme Court granted the plaintiff a new trial because the trial court had incorrectly instructed the jury on assumption of risk. The *Rogers* court used strong language condemning the jury instruction in that case:

> AMI [Arkansas Model Jury Instruction] 612 should be used only in exceptional circumstances, if indeed it is ever proper now that assumption of risk is not a complete defense. The instruction refers to assumption of risk as 'that defense' without explaining that it is not in fact a

defense. We fear that in most situations AMI 612 would suggest to the jury ... that assumption of risk is an issue to be considered separately, in addition to the plaintiff's negligence.

*Id.* 679 S.W.2d at 186.

The district court in the case before us gave an instruction from Devitt & Blackmar,[5] not AMI 612. Like AMI 612, however, the instruction in this case referred to "this defense." Nevertheless, there are important differences in the two cases that make it unnecessary for us to order a new trial. In *Rogers*, no comparative fault instruction was given, nor was fault defined to include assumption of risk. *See id.* The only reference to assumption of risk was in AMI 612, which called it a defense. Here, however, the jury was specifically instructed that liability was to be apportioned according to fault and that fault included any risk assumed.

Bonds also cites *Rini v. Oaklawn Jockey Club*, 861 F.2d 502 (8th Cir.1988), the most recent Eighth Circuit case on assumption of risk under Arkansas law. In *Rini*, the court ordered a new trial because of a jury instruction that implied that assumption of risk was a complete defense. The jury found that the plaintiff had been 65% negligent, that the defendant had been 35% negligent, and that the plaintiff had assumed the risk. The separate finding on assumption of risk showed that the jury was misled by the erroneous instruction into believing that assumption of risk was a separate affirmative defense. Here, in contrast, the jury did not infer that assumption of risk was an issue to be considered separately; it returned a general verdict in favor of Snapper with no separate finding on assumption of risk.

We conclude that the assumption of risk instruction, in the context of the other instructions on comparative fault, was not misleading. Jury instructions must be read as a whole, especially where the jury does not make particularized determina-

5. E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions (Civil) § 82.11 (4th ed. 1987).

tions but decides the entire case by a general verdict. *Smith v. Hussman Refrigerator Co.*, 619 F.2d 1229, 1245 (8th Cir.) (en banc), *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). Although the district court should have eliminated the words "this defense," the error was harmless because the other instructions made it clear that assumption of risk is an element of fault, not a complete bar to recovery.

We need not reach the issue presented by Snapper's cross-appeal because it would become relevant only if we granted Bonds a new trial.

### III.

Because any errors in the district court's jury instruction on assumption of risk were harmless, we affirm.