Jean STANTON, Plaintiff–Appellant,

v.

**ARKANSAS VALLEY ELECTRIC COOPERATIVE CORPORATION, Defendant–Appellee.**

No. 94–2468.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1994.

Decided March 7, 1995.

Sam Sexton, III, Fort Smith, AR, argued, for appellant.

Eric D. Janzen, McAlester, OK, argued (Charles Neal, Jr., McAlester, OK, Rex M. Terry, Fort Smith, AR, on the brief), for appellee.

Before MAGILL and BEAM, Circuit Judges, and SHANAHAN,[*] District Judge.

SHANAHAN, District Judge.

Jean Stanton appeals from the judgment of the district court[1] entered after a verdict for Arkansas Valley Electric Cooperative Corporation in Stanton's negligence action. Stanton seeks a new trial, contending that the district court erred in refusing to give her tendered instruction on an electric company's duties concerning a defect in its customer's line. Stanton also contends that the court should not have given an instruction on comparative negligence. We affirm.

I.

In 1989, Jean Stanton purchased a house in Pocola, Oklahoma. The house was built by a prior owner in 1969. Arkansas Valley had supplied electricity for the house since 1970 and continued supplying electricity for the house after Stanton's purchase.

Between the time when Arkansas Valley began electrical service to Stanton's home and February 22, 1990, Stanton experienced no electrical problems in her house. The panel box in the Stanton home was operational and had required no servicing.

When Stanton's electrical service was disrupted on February 22, 1990, she telephoned Arkansas Valley from her place of employment. Shortly afterwards, Archie Hutchins and another serviceman of Arkansas Valley went to the Stanton house where they were joined by another Arkansas Valley serviceman, Dennis Dolan. The three servicemen began an investigation into the disruption of electrical service to Stanton's house.

Hutchins determined that a fuse had blown in the transformer from which Arkansas Valley supplied electricity to the Stanton home. The servicemen attempted to determine the cause of the blown transformer fuse and first looked for signs that an animal, tree limb, or something else had entered the transformer and caused the fuse to blow. Finding no apparent cause for the blown transformer fuse, Hutchins attempted to place another fuse in the transformer. However, as he was replacing the blown fuse, Hutchins noticed an arcing of electricity. Consequently, he pulled the fuse out of the transformer and disconnected the lines leading from the transformer to the house in order to test the transformer. With the lines detached, Hutchins inserted a replacement fuse into the transformer for the test which disclosed that the transformer was working properly. Hutchins reconnected the lines from the transformer to the house. Shortly after the lines were reconnected, the replacement fuse in the transformer failed, and the Arkansas Valley's servicemen again began searching for the cause of the problem. The servicemen decided that the disruption of the electrical service might have been caused by

[*] The HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation.

1. The HONORABLE JIMM LARRY HENDREN, United States District Judge for the Western District of Arkansas.

defects in the pole casing or the underground lines leading to the Stanton house. When the servicemen began looking for the underground lines, they noticed a fire inside Stanton's house, and called the fire department. The house was extensively damaged by the fire.

Lonnie Buie, an expert called by Arkansas Valley, testified that the panel box in Stanton's house was not only the fire's source, but also its cause. According to Buie, the panel box did not contain a main disconnect circuit breaker and, therefore, did not conform with the national electric code which had been in effect since 1969. This deficiency caused the fire. Buie further testified that the standard of care for an electrical utility doing business in Oklahoma is governed by the regulations of the Oklahoma Corporation Commission. Rule 8 of the that commission states that an electric utility company has no duty to inspect a customer's electric service beyond the utility's point of delivery. It is undisputed that the Stanton's electrical panel box is beyond Arkansas Valley's point of delivery to the Stanton home.

At trial, Stanton tendered the following instruction regarding Arkansas Valley's duties to inspect and repair:

> When an electric utility company, such as Arkansas Valley Electric Company, has actual notice that its customer's lines are defective, the electric utility company must either inspect and repair its customer's lines or immediately disconnect the electric service to its customer's lines and should not reconnect service until notice of the defect is given to its customer.

The district court rejected Stanton's tendered instruction.

Despite Stanton's objection that an instruction on comparative liability was unwarranted under the evidence, the court gave the jury the Arkansas Model Jury Instruction on comparative negligence:

> If you find that the fire at the residence of the plaintiff was proximately caused by the negligence on the part of the defendant and not by negligence on the part of the plaintiff, then plaintiff is entitled to recover the full amount of any damages you may find she has sustained as a result of the fire.
>
> If you should find that the fire was proximately caused by the negligence of both the plaintiff and the defendant, then you must compare the percentages of their negligence.
>
> If the negligence of the plaintiff is of less degree than the negligence of the defendant, then plaintiff is entitled to recover any damages which you may find she has sustained as a result of the fire after you have reduced them in proportion to the degree of her own negligence.
>
> On the other hand, if defendant was not negligent or if the negligence of the plaintiff is equal to or greater in degree than the negligence of the defendant, then plaintiff is not entitled to recover any damages.

Two verdict forms were provided to the jury; one as a verdict for Arkansas Valley, and another a verdict for Stanton with an instruction to assess damages sustained by Stanton. The jury returned a general verdict in favor of Arkansas Valley.

## II.

In *Doe v. B.P.S. Guard Services, Inc.*, 945 F.2d 1422 (8th Cir.1991), this court described the standard of review on appeal from a verdict:

> The standard of review on appeal from a jury verdict is quite stringent. We must view the evidence, together with all reasonable inferences, in the light most favorable to [the prevailing party].... We may reverse only if: "[A]ll of the evidence points one way and is susceptible of no reasonable inferences sustaining the position of [the prevailing party]. Furthermore, we must resolve direct factual conflicts in favor of [the prevailing party], assume as true all facts in [the prevailing party's] favor which the evidence tends to prove, and give [the prevailing party] the benefit of all reasonable inferences."

*Id.* at 1425 (quoting *Robertson Oil Co. v. Phillips Petroleum Co.*, 871 F.2d 1368, 1371 (8th Cir.1989) (citations omitted).

Oklahoma law governs questions of substantive law in this case. Electric utilities doing business in Oklahoma are regulated by the Oklahoma Corporation Commission which is empowered by the Oklahoma Constitution to promulgate rules, regulations, and standards for electrical utilities. See *Henry v. Corporation Comm'n*, 825 P.2d 1262, 1267 (Okla.1990).

Rule 8(D)(3) of the Oklahoma Corporation Commission defines the duty of an electric utility: a "utility has no duty to conduct inspections of electrical wiring and equipment except for such wiring and equipment which is owned, installed, or controlled by the utility." Nothing in the record suggests that Stanton's panel box was installed by Arkansas Valley. Regarding ownership and control of equipment and wiring, Commission Rule 8(A) is instructive, stating that the "point of delivery of electrical service shall be the point at which the electrical supply system of the utility connects to the wiring system of the consumer."

■ Although Stanton does not contend that her electrical panel box was "owned, installed, or controlled" by Arkansas Valley, she, nevertheless, argues that the district court, by refusing to give the tendered instruction regarding Arkansas Valley's alleged duties to inspect and repair electric lines to Stanton's house, or leave the electric lines disconnected, left the jury with the impression that Arkansas Valley could reconnect Stanton's electrical service even if it knew that doing so would damage Stanton's property.

We do not accept Stanton's characterization of the "impression" left on the jury by the district court's refusal to use the tendered instruction. The district court supplied the jury with ample instruction for a verdict in Stanton's favor, assuming that the jury found that Arkansas Valley had actual notice of a dangerous defect on Stanton's side of the delivery point for the electrical service. For example, the court instructed the jury that Arkansas Valley was responsible for the negligence of its servicemen at Stanton's house at the time of the fire. The court further instructed the jury that electric utilities are held to a heightened standard of care. "Jury instructions must be read as a whole, especially where the jury does not make particularized determinations, but decides the entire case by general verdict." *Bonds v. Snapper Power Equipment Co.*, 935 F.2d 985, 989–90 (8th Cir.1991).

■ Moreover, the evidence does not indicate that Arkansas Valley had actual notice of any problem on Stanton's side of the delivery point until the fire was discovered by the servicemen. Accordingly, the district court was correct to refuse Stanton's tendered instruction that where an electric utility has actual notice of a defect in the customer's equipment, the utility must inspect and repair that defect or disconnect the customer's service. The evidence fails to support a central premise of the tendered instruction, namely, Arkansas Valley's actual notice of a defect on Stanton's side of the delivery point. We find that a reasonable jury, considering the evidence presented in this case, could conclude that Arkansas Valley was not negligent and was without notice of the defect on Stanton's side of the delivery point. Accordingly, Stanton is not entitled to a new trial as the result of the district court's rejection of the tendered instruction.

Regarding Stanton's argument that the district court's comparative negligence instruction was improper, we need not decide whether there was an evidentiary basis for the instruction since the jury returned a general verdict. Because the jury found that Arkansas Valley was not guilty of any negligence, Stanton could not have recovered even in the absence of the comparative negligence instruction.

Accordingly, the judgment of the district court is affirmed.