[No. B027528. Second Dist., Div. Five. Nov. 16, 1988.]

HAROLD KING et al., Plaintiffs and Appellants, v.
MAGNOLIA HOMEOWNERS ASSOCIATION, Defendant and
Respondent.

COUNSEL

Leon P. Gilbert for Plaintiffs and Appellants.

Koslov, Erickson & Cady and M. Hank Etess for Defendant and Respondent.

OPINION

ASHBY, J.—Plaintiff and appellant Harold King, an air conditioner repairman, fell while descending a ladder after repairing an air conditioner on the roof of a 10-unit condominium complex managed by the homeowners, defendant and respondent Magnolia Homeowners Association. Plaintiff brought this personal injury action on theories of negligence and premises liability, alleging that the ladder, which was affixed to the building, was unsafe.[1] The trial court granted summary judgment in favor of defendant (Code Civ. Proc., § 437c) on the ground that the claimed defect in the ladder was obvious to plaintiff, and that having previously climbed up and down the ladder, plaintiff assumed the risk when he elected to ascend the ladder again to service the air conditioner. The pertinent facts are undisputed, and plaintiff's appeal raises only questions of law about the doctrine of assumption of the risk.

---

[1] Plaintiff's wife, Betty King, also sued for loss of consortium.

Plaintiff, an independent contractor, came to defendant's premises in response to an unscheduled complaint that the air conditioner was not working. He successfully went up and down the ladder to see what was wrong with the air conditioner. The ladder was affixed to the building and went 30 feet straight up. During his initial trip up and down the ladder, plaintiff noticed that the ladder seemed "too close" to the building for him to climb comfortably. He had to bend his knees outward, and when he placed his feet on the rungs his toes would touch the building.

After the initial trip up and down, plaintiff went to defendant's manager and complained that he thought the ladder was unsafe, and he asked the manager if there was any other way to get to the roof. The manager told him there was no other way and "There's nothing to it, I go up there all the time myself." Plaintiff told the manager, "Well, I guess if you can do it, I can do it."

Plaintiff ascended the ladder again and serviced the air conditioner. The accident occurred on his way back down, when he was three or four steps down from the top. He was carrying some tools strapped to his shoulder, but both his hands were free. Plaintiff described the accident in his deposition as follows: "Q And how did your fall occur? What happened to make you fall? [¶] A As I'm letting go with one hand and grasping onto the rung with the other one, I've—I was having—I was attached to the ladder. In other words, I have one hand on the ladder all the time. But as I am grasping for the rung, I reached out, and because it was so high, I'm paranoid, and I grabbed for the ladder and I grabbed a hold of the rung but I didn't have a clear hold of it, and by the time I reached again—by the time I reached to grasp the ladder again, I had already fall[en]. [¶] Q So, as I understand it, you had one hand above the other—[¶] A Yes. [¶] Q And as you reached for the rung with the lower hand, you let go of the rung with your upper hand? [¶] A Yes. [¶] Q And your lower hand didn't get anything to grab? [¶] A It had a hold of it but it didn't have a good grip on it. [¶] Q So, you went to take another grab at it? [¶] A Yes. [¶] Q About the time you got a hold of it, it was too late to get a good grip on it? [¶] A Yes. [¶] Q Did you just fall backwards? Is that what happened? [¶] A Yes. [¶] Q Were your feet still on the ladder? [¶] A Yes."

Plaintiff based his case primarily on the assertion that the ladder did not comply with a provision of the City of Los Angeles Mechanical Code. Former section 95.6150(c) of that code,[2] relating to access to rooftop heating equipment by ladder, states that such ladder shall "have a minimum 3½ inch toe space." After the accident an expert on plaintiff's behalf examined

---

[2] Presently section 95.0507(h).

the ladder and found the toe space measured 2½ inches. Plaintiff's expert opined that inadequate toe space made it more difficult for plaintiff to save himself because "once he missed his hand hold and lost his balance, there was no chance for him to regain his hold or balance by exerting a righting torque with his ankles. If his foot contact with the vertical ladder rung had been more towards the instep, he could have exerted a force with his ankles tending to rotate his body towards the building. This force, while small would have facilitated him in keeping his balance."

Prior to this accident defendant homeowners association had never received any notice that the ladder was dangerous or defective or in need of repair. The ladder was the only access to the roof and had been used frequently without prior complaints.

## DISCUSSION

As the trial court concluded, the claimed inadequate toe space in the ladder was obvious to plaintiff upon plaintiff's initial trip up and down the ladder. Plaintiff discussed the ladder with the manager, then told her, ". . . if you can do it, I can do it." Plaintiff, already having succeeded climbing the ladder, assumed the risk he could do it again. He had knowledge and appreciation of the specific risk involved, and he voluntarily exposed himself to the danger. (*Prescott* v. *Ralph's Grocery Co.* (1954) 42 Cal.2d 158, 162 [265 P.2d 904].)

■ On appeal plaintiff contends that the doctrine of implied assumption of the risk no longer has any legal viability or that the doctrine is inapplicable to the present case as a matter of law. Finding plaintiff's legal contentions unpersuasive, we affirm.

Plaintiff first contends that only *express* contractual assumption of the risk is viable as a defense. He contends the doctrine of reasonable implied assumption of the risk no longer exists, but has been entirely subsumed by the adoption of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. Plaintiff's contention is not supported by the language of the California Supreme Court in *Li,* which described several forms of assumption of the risk. *Li* held only that *to the extent* the doctrine of assumption of the risk overlaps with unreasonable conduct of the plaintiff in failing to care for his own safety, it is subsumed by comparative negligence. (*Id.* at pp. 824-825, 829. See *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 375-376, fn. 8 [182 Cal.Rptr. 629, 644 P.2d 822].)

After a thorough review of the recent California authorities the court in *Ordway* v. *Superior Court* (1988) 198 Cal.App.3d 98, 102-107 [243

Cal.Rptr. 536] concluded that reasonable implied assumption of the risk survives *Li* v. *Yellow Cab Co., supra.* (See also *Neinstein* v. *Los Angeles Dodgers, Inc.* (1986) 185 Cal.App.3d 176, 183 [229 Cal.Rptr. 612]; *Rudnick* v. *Golden West Broadcasters* (1984) 156 Cal.App.3d 793, 798-800 and fn. 4 [202 Cal.Rptr. 900]; *Nelson* v. *Hall* (1985) 165 Cal.App.3d 709, 713-714 [211 Cal.Rptr. 668]; *Baker* v. *Superior Court* (1982) 129 Cal.App.3d 710, 719-720 [181 Cal.Rptr. 311].) The *Ordway* court criticized *Segoviano* v. *Housing Authority* (1983) 143 Cal.App.3d 162, 166-175 [191 Cal.Rptr. 578], relied upon by plaintiff, and certain comments to BAJI No. 4.30 (7th ed. 1986). (*Ordway* v. *Superior Court, supra,* 198 Cal.App.3d at pp. 103-104, 106, fn. 3.) We agree with the *Ordway* court that the survival of reasonable implied assumption of the risk accords with the distinctions drawn by the California Supreme Court in *Li* and *Lipson.*

Plaintiff next contends that the doctrine of assumption of risk is inapplicable if the plaintiff's injury occurs as the result of a violation by the defendant of a safety statute, ordinance or regulation. Plaintiff states the rule too broadly. Violation of a statute by the defendant establishes a presumption of defendant's negligence under Evidence Code section 669, but it is still possible for a plaintiff, knowingly and voluntarily, to assume the risk of the defendant's presumed negligence. (*Smith* v. *Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 10-11 [113 Cal.Rptr. 771, 88 A.L.R.3d 1188].)

In some circumstances, the nature of the statutory violation is such that the fundamental purpose of the statute would be defeated if the plaintiff were permitted to assume the risk. The reason for this exception was explained in *Finnegan* v. *Royal Realty Co.* (1950) 35 Cal.2d 409, 431 [218 P.2d 17]: "There are certain statutes which clearly are intended to protect the plaintiff against his inability to protect himself. Such are the child labor acts, and various safety statutes for the benefit of employees as to which the courts have recognized, in this respect at least, the economic inequality in bargaining power which has induced the passage of the legislation. Since the fundamental purpose of such statutes would be defeated if the plaintiff were permitted to assume the risk, it is generally held that he cannot do so, either expressly or by implication. The workman has no alternative but the loss of his livelihood, it is his 'poverty and not his will' which consents, and economically he is no more free to leave his employment than a soldier or a sailor."

This reasoning is also expressed in section 496F of the Restatement Second of Torts: "The plaintiff's assumption of risk bars his recovery for the defendant's violation of a statute, unless such a result would defeat a policy of the statute to place the entire responsibility for such harm as has occurred upon the defendant."

Thus the courts will not permit the defense of assumption of the risk in those situations where the plaintiff is in a class of persons unable to protect themselves. Most of the applications of this principle involve employees. An employer has a statutory duty to provide a safe place of employment (Lab. Code, § 6400) and the courts recognize that an employee is in no position to refuse to work under the conditions provided by the employer. (*Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 368 [104 Cal.Rptr. 566].)

Here, on the other hand, plaintiff was not defendant's employee under the Labor Code. Defendant is merely a condominium homeowners association who made an unscheduled call upon plaintiff to repair the air conditioner. Plaintiff was an independent contractor, not an employee of defendant or of another.[3] Plaintiff climbed up and down the ladder once and he knew and appreciated the difficulty. Plaintiff produced no evidence that he was not free to refuse to service the air conditioner after discovering the risk in the ladder. Instead, the evidence shows that plaintiff elected to assume the risk. In the particular circumstances of this case, the trial court properly found assumption of the risk to be applicable.

The judgment is affirmed.

Lucas, P. J., and Kennard, J., concurred.

---

[3] Plaintiff erroneously contends that defendant was plaintiff's "statutory employer." Plaintiff relies on a long line of older cases under the very broad definition of employer in former Labor Code section 6304, which included "every person having direction, management, control, or custody of any employment, place of employment, or any employee." This broad definition was repealed in 1971, narrowing the definition of employer and the liability for violations of industrial safety orders. (*Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 847-848 and fn. 7 [134 Cal.Rptr. 78]; *Salinero* v. *Pon* (1981) 124 Cal.App.3d 120, 129-131 [177 Cal.Rptr. 204].)