**Glynell BAKER, Appellant–Plaintiff,**

v.

**OSCO DRUG, INC. and Martin's Realty Company, Inc., Appellees–Defendants.**

No. 71A04–9308–CV–290.

Court of Appeals of Indiana, Fourth District.

April 19, 1994.

Transfer Denied July 29, 1994.

Daniel H. Pfeifer, Jeffrey J. Stesiak, Sweeney & Pfeifer, South Bend, for appellant.

Joseph Stalmack, Galvin, Stalmack & Associates, Hammond, Robert M. Edwards, Jr.,

Patrick D. Murphy, Jones, Obenchain, Ford, Pankow & Lewis, South Bend, for appellees.

RILEY, Judge.

## STATEMENT OF THE CASE

This is an appeal from an order of the St. Joseph Superior Court granting summary judgment in favor of the Defendants–Appellees and against the Plaintiff–Appellant. We reverse and remand.

## ISSUE

The issue for our consideration is whether the trial court erred when it granted summary judgment for the Defendants–Appellees because the Plaintiff–Appellant knowingly incurred the risk of her injuries as a matter of law.

## FACTS AND PROCEDURAL HISTORY

Glynell Baker ("Baker") is appealing from an adverse judgment rendered in favor of Osco Drug, Inc. ("Osco") and Martin's Realty Company, Inc. ("Martin's") (hereinafter collectively referred to as "appellees"). This suit arose from a slip and fall incident that occurred on an icy sidewalk just outside the Osco Drug Store in South Bend, Indiana. The property on which Osco is located is owned by Martin's.

Baker lived in South Bend, Indiana about fifteen (15) blocks from an Osco Drug Store where she frequently did her shopping. On February 24, 1990, Baker accompanied her neighbor, Pauline Morton, to Osco. Baker did not have an urgent need to go to the drug store, but simply went to ride along with her neighbor and friend. Baker's deposition indicates that she knew that it had been snowing intermittently on the day of the injury and in fact there was approximately two and a half to three inches of accumulation of snow on the Osco parking lot and a considerable accumulation of snow on the sidewalk near the entrance/exit. While at-tempting to exit the store, Baker slipped and fell on the ice sustaining injury.[1]

Baker filed suit against appellees. Appellees thereafter filed motions for summary judgment. Appellees contended therein that there was no genuine issue of material fact and that Baker had incurred the risk of her injury.[2] The trial court entered its order on April 29, 1993, granting summary judgment in favor of appellees. Specifically, the trial court found, as a matter of law, that Baker knowingly incurred the risk of her injury.

## STANDARD OF REVIEW

The issue before the trial court was whether the facts presented when viewed in the light most favorable to Baker, the non-moving party, presented any genuine issue of material fact. Summary judgment is an appropriate disposition if the designated

> ... pleadings, depositions, answers to interrogatories, and admissions on file, together with the [designated] affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 553; Ind.Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Fawley v. Martin's Supermarkets, Inc.* (1993), Ind.App., 618 N.E.2d 10, 12, *trans. denied; United Farm Bureau Mut. Ins. v. Schult* (1992), Ind.App., 602 N.E.2d 173, 174, *reh'g denied;* T.R. 56(C). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. T.R. 56(C); *Campbell v. Criterion Group* (1993), Ind.App., 613 N.E.2d 423, 428, *on reh'g* (1993), Ind.App., 621 N.E.2d 342; *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. Once the moving party makes a prima facie showing of the non-existence of a genuine issue of material fact, the burden shifts to

---

**1.** Apparently, there is a small ramp descending from the exit door of Osco leading to the parking lot. It was on this ramp that Baker slipped and fell.

**2.** The answers filed by Osco and Martin's contained several affirmative defenses, however their respective motions for summary judgment and memorandums filed in support thereof focused exclusively on the issue of incurred risk.

the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. T.R. 56(E); *Campbell,* 613 N.E.2d at 428; *Oelling,* 593 N.E.2d at 190.

■■■ On appeal, we are bound by the same standard as the trial court and we must consider all matters which were designated at the summary judgment stage in the light most favorable to the non-moving party. T.R. 56(C); *Campbell,* 613 N.E.2d at 428. On appeal, however, the party that lost in the trial court has the burden to persuade the appellate tribunal that the trial court erred. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. T.R. 56(C); *Fawley,* 618 N.E.2d at 12. Our role is to closely scrutinize the trial court's determination in order to assure that Baker was not improperly denied her day in court. *Campbell,* 613 N.E.2d at 428. Summary judgment is generally inappropriate in negligence actions. *State Street Duffy's, Inc. v. Loyd* (1993), Ind.App., 623 N.E.2d 1099, 1101.

### DISCUSSION AND DECISION

We find it significant that the definition of "fault" as used in the Indiana Comparative Fault Act (hereinafter "the Act") specifically includes "incurred risk". I.C. 34–4–33–2(a). The Act defines fault as:

> includ[ing] any act or omission that is negligent, willful, wanton, or reckless toward the person or property of the actor or others, but does not include an intentional act. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, *incurred risk,* and unreasonable failure to avoid an injury or to mitigate damages.

*Id.* (emphasis added). The Act has, in effect, defined fault to include incurred risk, but has not expressly abolished or retained the defense. The adoption and implementation of the Act in 1985 was intended to ameliorate the harshness of the then prevailing doctrine of contributory negligence. Under the common law rule, a slightly negligent plaintiff

was precluded from recovery of any damages, even against a highly culpable tortfeasor. *Kroger Co. v. Haun* (1978), 177 Ind. App. 403, 379 N.E.2d 1004.

We follow the lead of our supreme court in *State Through Highway Dept. v. Snyder* (1992), Ind., 594 N.E.2d 783, 786, wherein the court stated that under the Act

> [a] plaintiff's incurred risk is considered as 'fault' and is to be compared to other fault contributing to the accident. Thus, although at common law a plaintiff would have incurred the risk of the entire accident, under the Comparative Fault Act, the plaintiff has no longer incurred the entire risk but, theoretically, only a portion of it. Accordingly, comparing incurred risk under the Act with incurred risk at common law is a comparison of two distinct legal theories.

*Id.* at 786.

■■■ We are guided in part today by policy considerations in that we suggest that the legislature's inclusion of incurred risk in the definition of fault is indicative of their presumed intent that the defense no longer operate as a complete bar to recovery. Indeed, as we have alluded to previously, the adoption of the Act was intended to no longer subject the plaintiff who is partially at fault to the complete defense of contributory negligence. Under the Act, if a plaintiff's conduct satisfies the statutory definition of fault, he will be permitted to recover damages, but they will be reduced by his proportion of fault. Of course, recovery may still be completely barred if plaintiff's fault is assessed at greater than 50%. Further, the Act provides a mechanism by which the fact-finder is required to specifically determine the relative degree of the plaintiff's fault with respect to others. This inclusion of "incurred risk" in the definition of fault abolishes incurred risk as a complete bar to recovery and establishes that the fault of each party should be apportioned.

■■■ We decline to interpret the Act as abolishing incurred risk completely.[3] We

---

**3.** We note that it is well-settled that the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.* (1991), Ind., 578 N.E.2d

leave open the question of whether incurred risk will continue to be a viable defense in Indiana after the passage of the Act. Today we say only that, on the specific facts of this case, an incurred risk defense will trigger the apportionment principles of comparative fault. On the designated matters before us, we cannot conclude as a matter of law that incurred risk should operate as a complete bar to Baker's recovery.[4]

## CONCLUSION

We conclude that the trial court erred when it granted summary judgment in favor of the appellees finding that Baker incurred the risk of her injury as a matter of law.

We reverse and remand to the trial court for further proceedings not inconsistent with this opinion.

CHEZEM, J., concurs.

FRIEDLANDER, J., concurs with separate opinion.

FRIEDLANDER, Judge, concurring.

I agree with the majority that summary judgment was erroneously granted in this case. I believe that the time has come to recognize that the defense of incurred risk was greatly diminished, if not extinguished, by the adoption of Ind.Code 33–4–33–1 *et seq.*, the Comparative Fault Act (the Act). For purposes of this discussion, the terms "incurred risk" and "assumption of the risk" are synonymous.

Prior to the adoption of the Act, an Indiana tort law action was governed by the principle of contributory negligence. Contributory negligence was defined as "the failure of a person to exercise for his own safety that degree of care and caution which an ordinarily reasonable and prudent person in a similar situation would exercise." *Pugh's IGA v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1199, *trans. denied* (quoting *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, 1007). A finding of any amount or degree of contributory negligence on a party's part operated as an absolute bar to a recovery in a negligence claim. *Id.* Pursuant to the principle of contributory negligence, the doctrine of incurred risk was an affirmative defense which the party raising such defense had the burden to prove that the other party had actual knowledge of the specific, injury-producing risk and understood and appreciated the risk. *Forrest v. Gilley* (1991), Ind.App., 570 N.E.2d 934, *trans. denied.*

With the advent of comparative fault, the fact finder is assigned the task of considering the alleged injury-producing episode and assigning percentages of fault for the occurrence among the claimant, the defendant, and any non-parties, as that term is defined in the Act. I.C. 34–4–33–5. It is my view that the comparative fault scheme obviates the need for the defense of incurred risk, or assumption of the risk. Clearly, no aspect of the defense necessitates preclusion of the apportionment of fault pursuant to the comparative fault scheme.

There is a split of authority on this question among the jurisdictions which have adopted comparative fault. *See* Annotation, *Effect of Adoption of Comparative Negligence Rules on Assumption of Risk*, 16 A.L.R.4th 700 (1982 & Supp.1993). The arguments proffered on both sides of the question have been thoroughly explored (*see id.* and cases cited therein) and will not be reviewed here. I believe the better line of reasoning is exemplified by the Arkansas Supreme Court's statement in *Simmons v.*

---

669, 673; *N. Ind. Pub. Serv. Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153, 159; *Chicago and Erie R.R. Co. v. Luddington* (1910), 175 Ind. 35, 42, 93 N.E. 273, 273. As a statute in derogation of the existing common law, the Act must be strictly construed. *Indianapolis Power & Light Co.*, 578 N.E.2d at 673.

**4.** We note for clarity that Osco, as a commercial business open to the public, had a continuing duty to remove the ice and snow on its premises for the safety of its customers. *Get–N–Go, Inc. v.*

*Markins* (1989), Ind. 544 N.E.2d 484, *adhered to on reh'g Get–N–Go, Inc. v. Markins* (1990), Ind., 550 N.E.2d 748; *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821. The record before us demonstrates that Osco failed to take any measures to alleviate the harsh conditions that the weather created. It is further clear from the record that Baker was undisputably a business invitee of Osco. *See Burrell v. Meads* (1991), Ind., 569 N.E.2d 637, *reh'g denied.*

*Frazier* (1982), 277 Ark. 452, 642 S.W.2d 314, 316: "Because Arkansas is a comparative fault state, assumption of risk is not a complete bar to recovery but is simply a matter to be considered in deciding fault."

I acknowledge that in states which have determined that the comparative fault scheme in some degree diminishes the defense of assumption of the risk, there is a divergence of opinion upon the questions of how much, and in what way, the defense is eroded. Some states recognize a distinction between "primary" and "secondary" assumption of the risk and have held that the former retains vitality under comparative fault, while the latter does not.[1] *See, e.g., Swagger v. City of Crystal* (1985), Minn.App., 379 N.W.2d 183, *rev. denied.* Of those, some courts have held that primary assumption of the risk is applicable only when the necessary consent on the plaintiff's part was express, as opposed to implied. *See e.g., Collier v. Northland Swim Club* (1987), 35 Ohio App.3d 35, 518 N.E.2d 1226. Others have held that primary assumption of the risk survives under comparative fault *in toto*, without regard to whether the plaintiff's consent was express or implied. *See King v. Magnolia Homeowners Ass'n* (1988), 205 Cal.App.3d 1312, 253 Cal.Rptr. 140. Still others have held that the defense is completely obviated under comparative fault, and that arguments that would have supported the now obsolete incurred risk defense instead become relevant in allocating fault under a comparative fault system. *See, e.g., Brown v. Kreuser* (1977), 38 Colo.App. 554, 560 P.2d 105. The latter position has much to recommend it.

In any event, this is not the appropriate case in which to explore in detail the relative merits of each view. It is sufficient for now

to register my belief that the defense of incurred risk (or assumption of the risk) has been greatly diminished, if not entirely abolished, by the fault-allocation scheme of our comparative fault system. *Cf. Bob Schwartz Ford, Inc. v. Dunham* (1994), Ind.App., 631 N.E.2d 953. This is especially true when, as noted by the majority, Indiana's Comparative Fault Act includes "incurred risk" in the definition of "fault".

Subject to the foregoing comments, I concur in the result reached by the majority.

---

1. The defense of primary assumption of the risk is applicable in situations in which a plaintiff *knowingly manifested consent*, either express or implied, to voluntarily expose himself to the particular risk which resulted in injury. In such cases, incurred risk is not so much an affirmative defense as it is a refutation of the duty element of negligence:

> "Primary assumption of the risk, express or implied, relates to the initial issue of whether a defendant had any duty to protect the plaintiff from a risk of harm." *Swagger, supra,* 379

N.W.2d at 185 (quoting *Springrose v. Willmore* (1971), 292 Minn. 23, 192 N.W.2d 826, 827).

Secondary assumption of the risk is applicable when a plaintiff has encountered an appreciated risk created by the defendant *without manifesting consent* to relieve the defendant of his duty. Some courts have held that secondary assumption of the risk is extinguished under comparative fault, and becomes merely "a question of comparative negligence." *Swagger, supra,* 379 N.W.2d at 185 (quoting *Armstrong v. Mailand* (1979), Minn., 284 N.W.2d 343, 348).