LORI S. AUCKENTHALER, Appellant, v. STEVEN
GRUNDMEYER and JODY WHITE, Respondents.

No. 24745

July 7, 1994                                    877 P.2d 1039

*Bradley and Drendel, Ltd.* and *Joseph S. Bradley,* Reno, for
Appellant.

*Hibbs, Roberts, Lemons, Grundy and Eisenberg* and *Alice G.
Campos,* Reno, for Respondent Grundmeyer.

*Laxalt & Nomura* and *Katherine J. Savage,* Reno, for
Respondent White.

# OPINION

*Per Curiam:*

## FACTS

Appellant Lori S. Auckenthaler ("Auckenthaler") and several other individuals were riding horses in an area north of Reno, known as Red Rock. The individuals were participating in the "field training" of dogs owned by co-respondent Steven Grundmeyer ("Grundmeyer"). Field training is an exercise where dogs are led through a prearranged course marked by the random placement of birds. Co-respondent Jody White ("White") was a member of the group and was riding a horse owned by Grundmeyer named "Bum." White and Grundmeyer were specifically involved in the training expedition and the other riders were at the event as observers. The ride was purely recreational, and none of the participants obtained any compensation or commercial gain from the activity.

During the ride, Bum was acting antsy and nervous and had been threatening to kick other horses that ventured into his proximity. Bum had been recently gelded. Auckenthaler was injured when the horse she was riding strayed too close to Bum. Bum turned and kicked at Auckenthaler's horse, striking Auckenthaler in the leg.

Auckenthaler filed a negligence suit against both White and Grundmeyer. She alleged that White was negligent in continuing to ride a horse that was temperamental and exhibiting dangerous behavior. Auckenthaler also alleged that Grundmeyer was negligent for supplying White with a horse Grundmeyer knew was aggressive and anxious.

White and Grundmeyer moved for summary judgment. They alleged that in accordance with recent California case law, the appropriate legal standard of care governing participants in recreational activities was not simple negligence, but was instead reckless or intentional conduct. White and Grundmeyer claimed that Auckenthaler did not present any evidence satisfying this alternate legal standard.

The district court agreed and summarily dismissed Auckenthaler's complaint. The court adopted the California standard and reasoned that Auckenthaler "ha[d] not alleged or presented any evidence that defendants intentionally tried to hurt plaintiff or that defendants engaged in conduct which was so reckless as to be totally outside the range of ordinary activities involved in the horseback riding and dog training sport."

Auckenthaler appeals from summary judgment and argues that the district court erred by adopting a reckless or intentional standard of care because such a reduced standard affronts Nevada's abolition of implied assumption of risk. We agree and accordingly reverse the district court's judgment.

## DISCUSSION

Summary judgment is appropriate when the record on appeal, viewed in the light most favorable to the non-prevailing party, demonstrates that no genuine issue of material fact remains in dispute, and that the prevailing party is entitled to judgment as a matter of law. Caughlin Homeowners Ass'n v. Caughlin Club, 109 Nev. 264, 849 P.2d 310 (1993). On appeal, this court's review of an order granting summary judgment is *de novo*. Walker v. American Bankers Ins., 108 Nev. 533, 836 P.2d 59 (1992).

In granting summary judgment in favor of Grundmeyer and White, the district court adopted the standard of care for participants in a recreational event that was applied in two California Supreme Court companion decisions: Knight v. Jewett, 834 P.2d 696 (Cal. 1992), and Ford v. Gouin, 834 P.2d 724 (Cal. 1992). In *Knight,* plaintiff was injured while participating in an informal game of touch football. Defendant jumped up to intercept a pass and tumbled down on top of plaintiff's hand. *Knight,* 834 P.2d at 697. Plaintiff sued defendant for negligence. In affirming summary judgment for defendant, the California high court noted that an "overwhelming majority of the cases, both within and outside California . . . have concluded that it is improper to hold a sports participant liable to a coparticipant for ordinary careless conduct committed during the sport." *Id.* at 710. The court then established the general proposition that in sporting activities, liability can only be imposed "where the participant intentionally injures another player or engages in conduct that is so reckless as to be totally outside the range of the ordinary activity involved in the sport." *Id.* at 711. The court ultimately held that plaintiff could not prove that defendant had engaged in this type of conduct.

In *Ford,* the California Supreme Court extended the reckless or intentional legal standard of care to participants in a recreational activity. Plaintiff was injured in a water skiing accident when he struck a tree limb. Plaintiff sued the driver of the boat for negligence, claiming that he drove the boat too close to the shore of the waterway. The court upheld summary judgment in favor of defendant, concluding that plaintiff could not prove that he had been injured by intentional or reckless behavior. *Ford,* 834 P.2d at 728.

The purpose of this differing standard of care was succinctly articulated by a more recent California case:

> By eliminating liability for unintended accidents, the doctrine ensures that the fervor of athletic competition will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop. On a larger scale, participation in amateur athletics is a socially desirable activity that improves the mental and physical well-being of its participants.

Stimson v. Carlson, 14 Cal. Rptr. 2d 670, 673 (Ct. App. 1992).

As in *Knight* and *Ford,* and pursuing the same policy goals as articulated in *Stimson,* the district court in the case at bar ruled that Auckenthaler did not present any evidence establishing that she was injured as a result of reckless or intentional conduct. The sole issue on appeal is whether the district court erred by deviating from Nevada's ordinary negligence rubric and adopting this California standard.

Auckenthaler claims that the district court improperly relied upon *Knight* and *Ford* because both decisions applied the reckless or intentional standard in the shadow of California's recognition of primary implied assumption of risk as a viable affirmative defense. She asserts that the reduced standard contravenes Nevada precedent which has abolished all forms of implied assumption of risk. *See* Mizushima v. Sunset Ranch, 103 Nev. 259, 264, 737 P.2d 1158, 1161 (1987).

Before analyzing this aspect of Auckenthaler's argument, it is necessary to understand the different types of the assumption of risk affirmative defense and certain nuances of corresponding California law. Assumption of risk is divided into two separate categories: express and implied. Express assumption of risk is essentially a contract where the plaintiff signs a document and openly agrees to hold the defendant harmless for known and inherent dangers of a particular activity.

Implied assumption of risk has three different sub-categories. The first, often referred to as primary implied assumption of risk, occurs when the plaintiff voluntarily accepts known risks involved in a particular situation, and the defendant has no duty of care with respect to the plaintiff. The classic example is the spectator at a baseball game who impliedly understands that the players have no duty to refrain from hitting a ball into the stands. The second variety of implied assumption of risk is characterized by the plaintiff voluntarily encountering a known risk created by the defendant's negligence. An example is where the plaintiff continues to use a defective lawn mower that he knows is defec-

tive because the inconvenience of repair outweighs the added risk of injury. The third variety of implied assumption of risk is where the plaintiff unreasonably accepts a known threat of danger in pursuing a particular course of conduct. This situation would exist if the plaintiff takes an unnecessary and expedient shortcut to his destination, confronting known hazards along the way. *See Mizushima,* 103 Nev. at 262, 737 P.2d at 1160.

It seems undisputed that the facts of the instant case present a situation much like primary implied assumption of risk. Horseback riding is a recreational or sporting activity that has inherent dangers. By choosing to participate, the plaintiff impliedly consents to the inherent risks of the activity and the defendant has no duty or a reduced duty to protect the plaintiff.

If the accident at issue had occurred in California, there is no doubt Auckenthaler would be barred from recovery. Even though the California legislature has adopted pure comparative negligence, the state still recognizes the viability of primary implied assumption of risk as an affirmative defense. *See Knight,* 834 P.2d at 708. Conversely, the California high court has held that secondary implied assumption of risk (the latter two subcategories described above) has been subsumed by the state's comparative negligence framework. *See, e.g.,* Li v. Yellow Cab Co., 532 P.2d 1226 (1975). Due to this dichotomous precedent, California courts are struggling to define what constitutes primary and secondary aspects of the affirmative defense. To a large extent, the *Knight* and *Ford* decisions are geared toward defining the difference between the two legal concepts.

As Auckenthaler correctly argues on appeal, the principles described in *Knight* and *Ford* and utilized by the district court in granting summary judgment are inapplicable in Nevada. The holding and rationale of those decisions are infected by California's recognition of primary implied assumption of risk. The reckless or intentional standard of care applied in California is simply another way of determining that the plaintiff assumed the risk of injury. In either instance, the plaintiff is summarily barred from recovery. Such a reduced standard affronts Nevada law because, unlike California, Nevada precedent has abrogated all forms of implied assumption of risk. Accordingly, we conclude that the district court erred by adopting California's reckless or intentional standard of care for participants in recreational activities.

This conclusion is supported and, in fact, mandated by our holding and accompanying rationale in *Mizushima.* In *Mizushima,* plaintiff and a friend went to a commercial stable and rented horses for a horseback riding excursion. Plaintiff was thrown from her mount and severely injured when the horse she

was riding bolted back to the stable toward the end of the ride. Plaintiff sued the stable for negligence, claiming that it failed to provide a safe riding environment. At trial, the district court instructed the jury regarding the affirmative defense of assumption of risk. The jury returned a defense verdict. *Mizushima,* 103 Nev. at 262, 737 P.2d at 1159.

We reversed on appeal, holding that implied assumption of risk had been subsumed by Nevada's comparative negligence statute.[1] *Id.* at 264, 737 P.2d at 1161. All three forms of the defense were unduly confusing, and examples of such conduct were best examined utilizing traditional principles of comparative negligence:[2]

> In our view, it is equally clear that *any* variety of an implied assumption of risk is merely circumlocution for the preclusive form of contributory negligence the statute sought to eliminate. No matter how the assumption of risk scenario is depicted, *it is translatable into a degree of negligent conduct* by the plaintiff. . . .
>
> The defense of assumption of risk is not favored. [Footnote omitted.] It continues to vex and confuse as a masquerade for contributory negligence. Moreover, *it focuses on a lack of duty in the defendant* rather than the more compelling issue of comparative breach of duty by the parties. In that regard, the doctrine faces backward, emphasizing escape more than accountability and inertia more than progress. In short, *we are unable to ascertain any productive reason why any species of implied assumption of risk should survive the beneficent purposes and effect of Nevada's comparative negligence statute.*

*Id.* at 263-64, 737 P.2d at 1161 (emphasis added).

In a footnote, we expanded upon this rationale and added the following:

> We perceive no valid reason for leaving primary implied assumption of risk intact. In virtually every instance, including the injured spectator, liability can be analyzed in the context of the conduct of the actor and the injured party, weighed against a standard of care dictated by the circumstances. Thus, there is no arbitrary bar to recovery and no sweeping exemption from duty accorded a defendant. *The determination of duty is left to the jury* as a factor in the comparative negligence analysis.

*Id.* at 264, 737 P.2d at 1161 n.7 (emphasis added).

---

[1]Nevada's comparative negligence standard is codified in NRS 41.141.

[2]Express assumption of the risk was unaffected by the court's holding. *Mizushima,* 103 Nev. at 262, 737 P.2d at 1159.

This language not only abrogated implied assumption of risk as an affirmative defense, but also established that *every* future implied assumption of risk type case would be resolved by applying a traditional negligence standard of care. The negligence standard is sufficiently flexible to accommodate liability issues underlying all recreational injury cases. There is no reduction in the defendant's standard of care (e.g., reckless or intentional), nor is there any fictitious undertaking that the defendant does not owe a duty to the plaintiff. As we noted in *Mizushima,* implied assumption of risk cases improperly *"[focus] on a lack of duty in the defendant* rather than the more compelling issue of comparative breach of duty by the parties." *Id.* at 264, 737 P.2d at 1161 (emphasis added). Whether the defendant has failed to act reasonably in the particular circumstances is not an issue of law, but is a matter for the jury to decide.[3] *See* Joynt v. California Hotel & Casino, 108 Nev. 539, 835 P.2d 799 (1992).

Grundmeyer and White try to overcome the foregoing analysis by arguing public policy. They warn that applying an ordinary negligence standard to the case at issue will translate into a flood of future litigation between participants in sporting and recreational activities. They maintain that such an occurrence would have a chilling effect on sports participation within Nevada. *See, e.g.,* Nabozny v. Barnhill, 334 N.E.2d 258, 260 (Ill. App. Ct. 1975) (applying reckless standard to soccer game; fear of liability would curtail the proper fervor with which the game should be played). To combat this policy dilemma, Grundmeyer and White claim that this court should adopt a reckless or intentional standard of care. This is the approach followed by a number of states that have examined the issue. *See, e.g., Knight,* 834 P.2d at 710; Pfister v. Shusta, 627 N.E.2d 1260 (Ill. App. Ct. 1994) (reckless standard applied to game where participants kicked can in college dormitory); Oswald v. Township High School Dist. No. 214, 406 N.E.2d 157 (Ill. App. Ct. 1980) (reckless standard applied to gym class basketball game); Gauvin v. Clark, 537 N.E.2d 94 (Mass.1989) (reckless standard applied to college hockey game); Moe v. Steenberg, 147 N.W.2d 587 (Minn. 1966) (reckless standard applied to ice skating injury); Ross v. Clouser, 637 S.W.2d 11 (Mo. 1982) (applying reckless standard of care to church softball game); and Marchetti v. Kalish, 559 N.E.2d 699 (Ohio 1990) (reckless standard applied to game of "kick the can"). Moreover, the reckless standard of care is not only fol-

---

[3]On the rare occasion, the court may withdraw the case from the jury if it determines that defendant's conduct could not reasonably be found negligent. *See* Restatement (Second) of Torts § 285(d) and § 285 comment e (1965).

lowed in California, where the state still clings to some form of assumption of risk, but is also applied in other states where assumption of risk has been subsumed by statutory comparative negligence. *See, e.g.,* Kabella v. Bouschelle, 672 P.2d 290, 294 (N.M. Ct. App. 1983) (public policy demands that a reduced standard of care governs cases involving recreational sporting injuries); Connell v. Payne, 814 S.W.2d 486 (Tex. Ct. App. 1991).

We are not persuaded. First, the negligence standard is a more attractive alternative to resolving these types of cases. The standard is malleable and the jury simply examines each case to determine whether the defendant acted unreasonably under the circumstances. Within the factual climate of recreational activities or even sporting events, the question posed is whether the defendant participated in a reasonable manner and within the rules of the game or in accordance with the ordinary scope of the activity. *See* Lestina v. West Bend Mut. Ins. Co., 501 N.W.2d 28 (Wis. 1993) (finder of fact determines whether defendant is liable for injury occurring in a sporting event utilizing an ordinary negligence standard of care); *see also* LaVine v. Clear Creek Skiing Corp., 557 F.2d 730 (10th Cir. 1977) (negligence standard applied to snow skiers); Gray v. Houlton, 671 P.2d 443 (Colo. Ct. App. 1983) (negligence standard applied to snow skiing accident); Babych v. McRae, 567 A.2d 1269 (Conn. Super. Ct. 1989) (negligence standard applied to hockey game); Duke's GMC, Inc. v. Erskine, 447 N.E.2d 1118 (Ind. Ct. App. 1983) (negligence standard applied to golf injury); and Crawn v. Campo, 639 A.2d 368 (N.J. Super. Ct. App. Div. 1993) (negligence standard applied to softball game), *leave to appeal granted*, 636 A.2d 516 (N.J., Nov. 18, 1993). This approach is straightforward and avoids the confusion related to tinkering with standards of care and defining what types of activities qualify for the differing legal treatment. At a practical level, this court avoids creating a wilderness of confusing and disjunctive precedent in this area of the law.

Second, adopting a reduced standard of care is merely another way of recognizing implied assumption of risk through the back door or by way of duty/risk principles. As indicated in *Mizushima,* Nevada's comparative negligence statute leaves no room for the continuation of the vexing defense of assumption of risk. Whether the court reduces the defendant's duty or concludes that the plaintiff assumed the risk of injury, the result is the same: sweeping denial of recovery based upon conduct that is best examined under a traditional negligence framework. *See* Murray v. Ramada Inns, Inc., 521 So. 2d 1123, 1136 (La. 1988).

Finally, claims regarding a potential flood of litigation and the chilling effect upon participation in recreational activities seem overstated. We have found very few cases allowing recovery for sports injuries based upon ordinary negligence principles. When properly applied, the negligence standard strikes the proper balance between vigorous participation in sports and accommodating litigants injured by unreasonable behavior.

In light of the foregoing, we conclude that the district court erred by adopting California's reckless or intentional standard of care. The underlying facts of this case, and all forthcoming similar cases, are to be examined by utilizing simple negligence rubric. Applying the negligence standard on appeal, it is clear that Auckenthaler presented enough evidence to overcome summary judgment. Accordingly, we reverse the district court's ruling and remand for further proceedings consistent with this opinion.