Thomas **GYURIAK** and Carol **Gyuriak**, Appellants–Plaintiffs,

v.

James **MILLICE**, Appellee–Defendant.

No. 71A04–0112–CV–569.

Court of Appeals of Indiana.

Sept. 24, 2002.

Michael J. Anderson, Anderson, Agostino & Keller, South Bend, IN, Attorney for Appellant.

Dane L. Tubergen, Vincent M. Campiti, Hunt Suedhoff Kalamaros, South Bend, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Thomas Gyuriak ("Gyuriak") and his wife Carol Gyuriak ("Carol"), plaintiffs below (collectively, "the Gyuriaks"), appeal the trial court's grant of summary judgment in favor of James Millice ("Millice")

on the Gyuriaks' claims of negligence, recklessness and loss of consortium stemming from a golf course accident in which Gyuriak was struck in the head by Millice's errant tee shot. We affirm.

### Issues

The Gyuriaks present four issues, which we consolidate and restate as whether the trial court properly entered summary judgment on their claims.

### Facts and Procedural History

On June 16, 1998, Gyuriak and Millice were golfing in different foursomes in a charity golf outing on a course in northern Indiana. Gyuriak's foursome was playing the third hole while Millice's group was preparing to tee off from the second. The two holes were roughly parallel, and played in opposite directions. Gyuriak evidently hit his ball into the rough between the second and third hole, approximately 220 yards from the second hole tee. The ball was closer in the rough to the fairway of the third hole. As Gyuriak was preparing to hit out of the rough, Millice was addressing his own ball at the second hole tee. Millice shot first, but not very well, and his ball unexpectedly flew directly toward Gyuriak. The other three in Millice's group yelled "fore," and everyone save for Gyuriak ducked. Gyuriak later stated that he never heard the warnings. Millice's ball struck Gyuriak squarely on the head as Gyuriak was in mid-swing.

On May 26, 2000, the Gyuriaks filed their Complaint against Millice, alleging that he was negligent and reckless, and alleging that Carol lost the consortium of her husband. On September 6, 2001, Millice filed his Motion for Summary Judgment and supporting materials. The Gyuriaks responded on October 18, 2001. The trial court heard Millice's summary judgment motion on October 22, 2001, and granted it on November 29, 2001. The Gyuriaks now appeal.

### Discussion and Decision

#### A. Standard of Review

■ Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. When reviewing a decision to grant summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind.Ct.App.1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* While our cases regularly state that summary judgment is rarely appropriate in negligence cases, *see, e.g., McDaniel v. Business Inv. Group Ltd.*, 709 N.E.2d 17, 20 (Ind.Ct.App.1999), summary judgment will be entered if the undisputed material facts negate at least one element of a plaintiff's claim. *Id.*

#### B. Analysis

##### 1. *Mark v. Moser*

The trial court granted summary judgment in favor of Millice on the basis of this Court's recent opinion in the case of *Mark v. Moser*, 746 N.E.2d 410 (Ind.Ct.App. 2001). In *Mark*, another panel of this Court determined that participants in sports activities are not liable for injuries caused by their ordinary negligence. Rather, we held that

> voluntary participants in sports activities assume the inherent and foreseeable dangers of the activity and cannot recover for injury unless it can be established that the other participant either intentionally caused injury or engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in

the sport. The plaintiff's assumption of risk is primary in nature inasmuch as it flows from the legal relationship of the parties, is evaluated according to an objective standard rather than a subjective standard, and acts to bar recovery. Thus, it is a question of law for the determination of the court, whether the injury-causing event was an inherent or reasonably foreseeable part of the game, such that the plaintiff is considered to have assumed the risk. If the court determines that the plaintiff did assume the risk, then the plaintiff's cause fails. If, on the other hand, the court determines that plaintiff did not assume the risk, then the cause proceeds to a jury to determine, as a question of fact, whether the co-participant intentionally or recklessly caused the injury.

*Id.* at 420 (internal footnote omitted). The trial court rejected the Gyuriaks' negligence claim outright, and entered summary judgment against them on their recklessness claim, concluding that under the holding in *Mark,* Gyuriak assumed the risk of his injury by playing golf.

The Gyuriaks first argue that the decision in *Mark* must be overturned because it is inconsistent with the Indiana Comparative Fault Act. *See* IND.CODE §§ 34–51–2–1 to 19. In particular, they contend that the holding in *Mark* conflicts with the Comparative Fault Act because it improperly sets up assumed risk as an absolute bar to liability for fault. Under the Act, "fault" includes negligent and reckless conduct as well as the "unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to

mitigate damages." IND.CODE § 34–6–2–44(b). This Court recognized in *Mark* that because the Act defines incurred risk [1] as a form of fault, incurred risk cannot operate as a complete bar to recovery; rather, incurred or assumed risk that constitutes fault must be weighed and apportioned along with any other fault. *Mark,* 746 N.E.2d at 414. *See also Heck v. Robey,* 659 N.E.2d 498, 504–505 (Ind.1995) (stating that because the Comparative Fault Act includes incurred risk within the definition of fault, "the complete defense of 'incurred risk' no longer exists; it is subsumed by the concept of fault in our comparative fault scheme.... Any rule that purports to effect an absolute defense based upon incurred risk is contrary to our comparative fault scheme.").

We were careful to note in *Mark,* however, that assumed risk is generally considered to be either primary or secondary in nature, and that, at least in the context of sporting activities, only the secondary assumption of risk was subsumed by the Comparative Fault Act. *See Mark,* 746 N.E.2d at 418. This is because the primary assumption of risk occurs when an individual, by voluntarily engaging in an activity, consents to those risks that are inherent in and arise by virtue of the nature of the activity itself. *See id.* In such cases, the participant is owed no duty with regard to such inherent and ordinary risks. *See id.* Thus, when a person sustains an injury as a result of risks inherent in sporting activities in which the person voluntarily engages, there is no occasion to invoke comparative fault principles because there has been no ·breach of any

---

**1.** We use the terms "incurred risk" and "assumed risk" interchangeably because they basically describe the same concept. *See Hardin v. Christy,* 462 N.E.2d 256, 263 n. 3 (Ind. Ct.App.1984) ("While some courts have limited the term 'assumption of the risk' to cases in which the parties stand in some sort of contractual relation, and have created other terms, such as 'incurred risk' for other cases, this is generally considered a distinction without a difference. Hence the terms are essentially interchangeable.").

duty of care and accordingly no conduct that would warrant the imposition of liability. *See Knight v. Jewett,* 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 704 (1992). Secondary assumption of risk, on the other hand, arises when a defendant has breached a duty of care to the plaintiff, but the plaintiff nevertheless knowingly encounters the risk presented by the defendant's breach. *Mark,* 746 N.E.2d at 418. Whether a plaintiff appreciated and willingly encountered the risk created by the defendant's breach is a question of fact. *Id.* The kind of incurred or assumed risk that has been subsumed by the Comparative Fault Act is thus necessarily the secondary, and not the primary, kind, because the concept of primary assumed risk essentially addresses the existence of a legal duty and not the nature of the parties' conduct, and is therefore unrelated to the question of "fault." [2] Thus, the holding in *Mark,* which is essentially that a participant in a sporting activity assumes the risk of dangers inherent in the activity such that the participant is owed no legal duty with regard to those inherent risks, does not conflict with the Comparative Fault Act.

The Gyuriaks further argue that if *Mark* is legally valid, it must be limited to situations involving competitive contact sports. Again, we disagree. *Mark* itself did not involve a contact sport. Rather, the parties were participants in a triathlon. Moreover, the *Mark* case itself repeatedly states its rule as applying to "participants in sports activities," or variations thereof, and does not limit itself to sports competitions. *See Mark,* 746 N.E.2d at 420. We therefore reject the Gyuriaks' proposed limitation.

### 2. Application of *Mark v. Moser*

Pursuant to *Mark,* the trial court properly granted summary judgment for Millice on Gyuriaks' negligence count. As for the Gyuriaks' recklessness count, the trial court concluded as a matter of law that Gyuriak assumed the risk of being struck by a ball when he decided to play golf, and that his claim therefore failed. We agree. As noted above,

> voluntary participants in sports activities assume the inherent and foreseeable dangers of the activity and cannot recover for injury unless it can be established that the other participant either intentionally caused injury or engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in the sport.

*Mark,* 746 N.E.2d at 420. In this case, there is no allegation that Millice intentionally injured Gyuriak; rather, it is undisputed that Millice simply shanked his ball. The Gyuriaks argue that Millice was

---

**2.** We recognize that in *Heck,* our Supreme Court disapproved of "primary assumption-of-risk terminology to the extent that it suggests that a lack of duty may stem from a plaintiff's incurred risk." 659 N.E.2d at 505. In the subsequent case of *Creasy v. Rusk,* 730 N.E.2d 659 (Ind.2000), however, the Supreme Court held that an Alzheimer's patient owed his nursing home caregiver no duty of care primarily because, like public safety officials, "caregivers ... are 'specifically hired to encounter and combat particular dangers,' and by accepting such employment assume the risk associated with their respective occupations." *Id.* at 668 (quoting *Anicet v. Gant,* 580 So.2d 273, 276 (Fla.Dist.Ct.App.1991)). As Justice Dickson recognized in his dissent in *Creasy,* the majority appears to have effectively adopted the primary assumption of risk doctrine as part of the standard duty analysis. *Id.* at 670–71 (Dickson, J., dissenting) (noting that *Heck* appeared to reject the primary assumption of risk doctrine, and that "[c]onsidering precedent, it is difficult to reconcile the majority opinion in this case with precedent...."). We agree, and therefore do not consider the above-quoted statement from the *Heck* decision regarding the primary assumption of risk doctrine to represent the Supreme Court's current position on the question.

reckless for teeing off because Gyuriak was standing in a position within the potential range of a mis-hit shot. Millice's decision to tee off under the circumstances was not, however, "conduct so reckless as to be totally outside the range of ordinary activity involved in the sport." *See Mark*, 746 N.E.2d at 420.

When the ball hit him, Gyuriak was standing in the rough between the two holes, at a spot closer to his own fairway. Gyuriak was therefore not standing within the area into which a player hitting from Millice's tee would direct his shot, and was not within the intended or anticipated path of Millice's ball. We simply cannot conclude that the act of teeing off is so reckless as to be totally outside the range of ordinary golf activity just because another player who is not within the appropriate and anticipated range of the first player's ball could conceivably be hit by the ball if it were shanked. Given the nature of golf course design, characterized by adjacent holes; the fact that courses are frequently crowded, often with more than one group playing each of a course's holes at a given time; and the nature of the game itself, involving shots traveling in excess of 200 yards, it would appear that a good number of golfers playing a course on a given day would be within each other's potential range for mis-hit shots. In light of these considerations, we must conclude as a matter of law that the risk to a golfer of being struck by an errantly but otherwise appropriately-hit ball when playing, however minimal, is an inherent and reasonably foreseeable aspect of the game of golf, and that golfers assume that risk in the primary sense by choosing to play the game. In other words, golfers simply owe one another no duty to protect one another from bad shots. This is not to say that golf course accidents will never give rise to liability. Our conclusion here would no doubt have been different had Millice shot his ball while Gyuriak was within range in Millice's own fairway. This, however, was not the case here.

We therefore conclude under the circumstances that the risk of Millice accidentally shanking his ball and striking Gyuriak while Gyuriak was in the rough between the two holes was an inherent and reasonably foreseeable danger associated with the game of golf, and that Gyuriak accordingly assumed that risk as a matter of law. Millice therefore did not owe Gyuriak a duty of care with regard to his tee shot. As Judge Baker, the author of our *Mark* decision, stated in a concurring opinion in another case, "[a]ny golfer in the rough of a hole which runs parallel to another should, as a matter of law, know the dangers of approaching golfers. To be surprised that approaching golfers hook or slice is akin to being surprised that not everyone shoots par." *Lincke v. Long Beach Country Club*, 702 N.E.2d 738, 741 (Ind.Ct.App.1998) (Baker, J., concurring). The trial court thus properly entered summary judgment in favor of Millice on the Gyuriaks' claims for recklessness. Because Carol's loss of consortium claim is purely derivative of her husband's claims, summary judgment was properly entered against her as well. *See Durham v. U-Haul Intern.*, 745 N.E.2d 755, 764 (Ind. 2001).

Affirmed.

NAJAM, J., concurs.

ROBB, J., dissents with separate opinion.

ROBB, Judge, dissenting.

I respectfully dissent. In affirming the trial court's grant of Millice's Motion for Summary Judgment, the majority relies on a case decided by another panel of this court, *Mark v. Moser*, 746 N.E.2d 410

(Ind.Ct.App.2001). I believe the decision in *Mark* was incorrect because incurred risk in Indiana can no longer be used as a complete bar to recovery, but is rather only part of the determination of comparative fault.

## I. Indiana Comparative Fault Act

Indiana adopted the Comparative Fault Act (the "Act"), in 1985, replacing common law contributory negligence. Ind.Code §§ 34–51–2–1 to 19. Pursuant to the Act:

> [A]ny contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery except as provided in section 6 of this chapter.

Ind.Code § 34–51–2–5. Section 6 of the Act states that in an action brought against one defendant or multiple defendants who may be treated as a single party, the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages. Ind.Code § 34–51–2–6.

"Fault" for purposes of the Act, is defined as:

> any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages.

Ind.Code § 34–6–2–45(b) (emphasis added). *See Heck v. Robey,* 659 N.E.2d 498, 504 (Ind.1995) (citing to an earlier version of the "fault" definition).

## II. Assumption of Risk

Generally, "a plaintiff who voluntarily assumes the risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm." Robert Carroll, Note, *Analysis of Mark v. Moser: Determining Duty of Care Between Sports Co Participants in Light of the Indiana Comparative Fault Statute,* 11 DePaul–LCA Journal of Art and Entertainment Law 425, 430 (2001) (quoting Restatement (Second) of Torts § 496A (1965)). Primary assumption of risk requires the defendant to show that (1) the plaintiff had full subjective understanding of the nature and presence of a specific risk; and (2) the plaintiff voluntarily chose to encounter the risk. *Id.* If a court finds that the primary implied assumption of risk doctrine is applicable, then the defendant owes no legal duty to protect the plaintiff from the particular risk that caused the injury. *Id.*

Secondary implied assumption of risk requires that (1) the defendant owed a duty of care to the plaintiff; and (2) the plaintiff proceeded to encounter a known risk imposed by the defendant's breach. *Id.*

## III. *Baker v. Osco Drug, Inc.* and *Heck v. Robey*

In *Baker v. Osco Drug, Inc.,* this court suggested that:

> [t]he legislature's inclusion of incurred risk in the definition of fault is indicative of their presumed intent that the defense no longer operate as a complete bar to recovery. Indeed, as we have alluded to previously, the adoption of the Act was intended to no longer subject the plaintiff who is partially at fault to the complete defense of contributory negligence.

632 N.E.2d 794, 797 (Ind.Ct.App.1994) (emphasis added). However, we left open the question of whether incurred risk would continue to be a viable defense in Indiana after the passage of the Act. *Id.* at 797–98.

Our supreme court answered that question one year later in *Heck*. The *Heck* court stated:

Consequently, the complete defense of "incurred risk" no longer exists; it is subsumed by the concept of fault in our comparative fault scheme. As a component of fault, it is subject to the Act's apportionment scheme that reduces or eliminates the plaintiff's recovery depending on the degree of the plaintiff's fault.

659 N.E.2d at 504–05 (footnote omitted).

In *Heck*, this court had ruled that Robey had impliedly assumed a risk of injury because of his choice of occupation as a paramedic and emergency medical technician. *Heck v. Robey*, 630 N.E.2d 1361, 1366 (Ind.Ct.App.1994). We stated that, when the plaintiff incurs risk in the primary sense, the plaintiff relieves the defendant of any duty towards the plaintiff and no negligence action may lie. *Id.* Significantly, our supreme court rejected this analysis and stated that, under the Act, a plaintiff may relieve a defendant of what would otherwise be his or her duty to the plaintiff only by an express consent. *Heck*, 659 N.E.2d at 505.

### IV. *Mark v. Moser*

In *Mark*, this court held that the Act did not apply and again relied on the primary assumption of risk theory. We stated that when the Indiana legislature eliminated the common law contributory negligence principles in favor of the Act, it failed to account for situations where parties are unable to protect themselves. *Mark*, 746 N.E.2d at 421. This left a "void in the law." *Id.* The court held that, because it is the job of the judiciary to fill the voids in the law, participants in sporting events are barred as a matter of law from recovering against co-participants for injuries sustained as a result of inherent or foreseeable dangers of the sport. *Id.* This hold-

ing resuscitated the primary assumption of risk theory that the Indiana Supreme Court disapproved of in *Heck*. Surprisingly, we did not cite to *Heck* once in our opinion in *Mark*.

In *Mark*, we relied on a California case, *Knight v. Jewett*, 3 Cal.4th 296, 11 Cal. Rptr.2d 2, 834 P.2d 696 (1992), in support of our holding that negligence was inappropriate for the inherent risks involved in sports. However, the Nevada Supreme Court has distinguished *Knight* on the basis of the different comparative law statutes of California and Nevada. *Auckenthaler v. Grundmeyer*, 110 Nev. 682, 877 P.2d 1039, 1041–42 (1994). The *Auckenthaler* court stated:

Even though the California legislature has adopted pure comparative negligence, the state still recognizes the viability of primary implied assumption of risk as an affirmative defense. Conversely, the California high court has held that secondary implied assumption of risk ... has been subsumed by the state's comparative negligence framework. Due to this dichotomous precedent, California courts are struggling to define what constitutes primary and secondary aspects of the affirmative defense.

*Id.* (citations omitted). The Nevada court stated that "[s]uch a reduced standard affronts Nevada law because, unlike California, Nevada precedent has abrogated all forms of implied assumption of risk." *Id.* at 1042. The court also stated that it was unable to ascertain any productive reason why any implied assumption of risk should survive the "beneficent" purposes and effect of Nevada's comparative negligence statute. *Id.*

In Indiana, our comparative fault act reads more like Nevada than California. The Act was enacted to "ameliorate the harshness of the then prevailing doctrine

of contributory negligence." *Baker*, 632 N.E.2d at 797. Our supreme court has specifically stated that the doctrine of incurred risk no longer exists. *Heck*, 659 N.E.2d at 504–05. And, most significantly, our supreme court has reversed this court when it has tried in the past to carve out an exception for implied primary assumption of risk. *Heck*, 659 N.E.2d at 505.

In sum, this court has attempted to carve out an incurred risk exception from the Indiana Comparative Fault Act before by making an exception for the incurred risk relating to the profession one chooses. *See Heck*, 630 N.E.2d at 1366. The Indiana Supreme Court reversed our decision and stated that incurred risk as a complete defense no longer exists after the enactment of the Act. *Heck*, 659 N.E.2d at 504–05.

In *Mark*, we carved out another incurred risk exception, this time for sports participants. Transfer was not sought, so our supreme court did not have an opportunity to comment on the case. However, there is no reason to believe that they would allow this exception when the other was so soundly reversed.

The majority posits that *Heck v. Robey* is not our supreme court's present position on assumption of risk because certain dangers are integral to certain jobs. Justice Dickson expressed concern that this might signal an approval of the theory of primary assumption of risk. It is for this proposition, they cite *Creasy v. Rusk*, 730 N.E.2d 659 (Ind.2000). Op. at 394–95 n. 2. In *Creasy*, a nursing home caregiver was struck by an Alzheimer's patient. The court held that the patient owed his caregiver no duty of care because she was specifically employed to encounter and combat particular dangers. *Creasy*, 730 N.E.2d at 667–68. However, the court stated:

In Indiana, the workers' compensation system, not the tort system, exists to cover such employment-related losses. To the extent that the workers' compensation system is inadequate as Creasy asserts, the inadequacy reflects defects in the workers' compensation system and is not a ground for alternative recovery under tort law.

*Id.* at 668. In *Creasy*, the plaintiff was attempting to extend tort law to cover damages not covered by workers' compensation. In the present case, the plaintiff is attempting to recover for his damages and the majority is using assumption of risk as a complete bar to recovery.

Additionally, the public policy concerns which drove the decision in *Creasy* dealt with situations with mental health patients specifically—for example, it is a difficult decision to place someone in a health care facility and it is not in the interest of the public to discourage people from placing someone in a facility for fear the patient may injure someone and the family would have to pay for such injury. However, such public policy concerns are not present in the case at hand. Holding a sports participant accountable for his negligent acts is not likely to discourage others from participating in sports, although it may encourage sports participants to be cautious of other participants.

Therefore, I would hold that *Mark v. Moser* is incorrect and should not guide our decision here. Rather, incurred risk should only be considered a factor in determining comparative negligence rather than a complete bar to recovery. I would hold that the trial court erred in applying a reckless or intentional standard of care and in granting Millice's Motion for Summary Judgment. This case should be examined under principles of simple negligence.[3]

---

**3.** As to the argument that negligence as a standard instead of reckless or intentional

will release a flood of litigation, we are not convinced. As the *Auckenthaler* court noted,

Gyuriak has raised a sufficient question of fact to overcome a motion for summary judgment. Although Millice claims he yelled "Fore," Gyuriak claims that he did not hear anyone yell "Fore" before he was struck by Millice's ball. Millice admits he saw Gyuriak in the rough between the two holes and still proceeded to tee off. Additionally, Millice admitted that Gyuriak was approximately 220 yards away, which was within his average drive. Finally, he stated that he did not wait for Gyuriak to move from the rough because he had a lot of confidence in his game that day. Moreover, the traditional negligence analysis does not telegraph the result as a jury might still find Gyuriak's failure to pay attention resulted in him being more than 50% at fault. It is not for us to make that determination. Based on this information, Gyuriak has presented sufficient evidence to raise a question of fact relating to Millice's negligence. I would reverse the trial court's grant of Millice's Motion for Summary Judgment and remand to the trial court for further proceedings.

"We have found very few cases allowing recovery for sports injuries based upon ordinary negligence principles. When properly applied, the negligence standard strikes the proper balance between vigorous participation in sports and accommodating litigants injured by unreasonable behavior." *Auckenthaler*, 877 P.2d at 1044.